Anderson & Koch's Ford franchise, as well as its area of sales effectiveness, by establishing a new dealership squarely within its existing dealer locality. That's the geographic area where Anderson & Koch is responsible for effectively selling and servicing Ford vehicles. Because Ford's change threatened to substantially impair Anderson & Koch's decades of investments, and was made arbitrarily and without regard to the present pattern of motor vehicle sales in the relevant market, Anderson & Koch brought this action, challenging Ford's change under two provisions of the Minnesota Motor Vehicle Sales and Distribution Act, that's Sections 80E.13P and Sections 80E.13K. Both statutory provisions, as we'll discuss today, address the specific circumstances of Ford's proposed change here. Now, on Ford's motion to dismiss, the District Court decoupled Ford's proposed change, and it determined that while Anderson & Koch may challenge the realignment of census tracts that necessarily follow the construction of the new dealership, it determined that it had no statutory recourse to challenge Ford's installation of the new dealership itself. The Court's resolution of that motion, we believe, is premised upon two erroneous legal determinations. First, the Court incorrectly determined that a separate provision of the MVSDA, Section 80E.14, provided the exclusive mechanism by which a dealer can challenge the establishment of a new dealership. What's wrong with the Court's analysis? Because the Court seemed to say that reasoning otherwise creates some confusion about the statute in terms of there being options for pursuing remedies that could produce, not necessarily absurd, but bordering absurd results. So, what was wrong with the District Court's conclusion that you had to go through the new dealership provision? Absolutely, Your Honor, and I want to address that directly. There is no inconsistency, nor is there any absurd or outlandish result that is yielded by Anderson & Koch being afforded a right to challenge the imposition of a new dealership under Section 80E.13 P&K. And the reason is, anytime a dealership is outside the 10-mile radius, which is what 80E.14 addresses, there is no recourse under 80E.14. And Anderson & Koch isn't seeking redress based on the distance between two points. It is seeking redress based on the unique circumstances that are addressed in 80E.13 P&K, which talk about things like the impairment of service and sales obligations, the substantial impairment of investments, changes to the area in a way that is inconsistent with the pattern of motor vehicle sales and registrations. And that's a separate and fundamentally different inquiry. And we would submit, and I know there's an argument that, well, you're giving greater power to a dealership to contest a dealership further away. That was the argument that Ford made in its appeal briefs, and it's the argument that the District Court advanced. The reason that's incorrect, Your Honor, is 80E.14 provides a lower bar. If you're within 10 miles, you have an automatic contest right. And then the manufacturer has to demonstrate good cause for the imposition of that dealership. The bar is much different and higher under 80E.13 P&K. Not only must the dealership establish the existence of a change to the area of sales effectiveness or change to the franchise, it must go further and demonstrate the arbitrary conduct, the change to the pattern of motor vehicle sales, or in the case of subsection K, substantial impairment to investments, substantial impairment to its ability to serve and sell in the relevant area. And there, I think, it's very important to highlight that the metric of harm isn't always equated to distance. Here, yes, it's true that Anderson Cooke is beyond the 10-mile range to challenge under 80E.14. But what Ford has done here is very unique. It has directed Anderson Cooke to take on 14 census tracts. That wasn't Anderson Cooke saying we want them. It was its obligation once those are delegated. And when that delegation happens, then Anderson Cooke is obligated under the dealer agreement to invest all the substantial resources, make all the investments in personnel, infrastructure to service the totality of that geography, because that's its obligation under the dealer agreement. And then when you make those millions of dollars of investments, and then you drop a dealership squarely within the dealer locality, all of those investments are substantially impaired. That's what 80E.13 is talking about. And we addressed this in the complaint. The relative proximity advantage will be lost. Forty-two to 57% of Anderson Cooke's current customers or prospective customers will now be closer to the new dealership. That means per Ford's own sales expectancy formula, they're likely to lose sales in equal measure. That's precisely what 80E.13P and K was designed to address, but it's an entirely different inquiry than 80E.14. Mr. Thomas, what relief does your complaint seek? Ford is arguing that you're trying to enjoin the new dealership and that you can't do that under this provision. The MDSDA specifically provides for both injunctive relief and damages, but both of which we are seeking. And we believe, and I think this is- What is injunctive relief, I think is the question. The injunctive relief would be to enjoin this dealership from- Existing? Existing within the dealer locality because that's what 80E.13P and K provides.  I'm sorry, Your Honor, I missed that. That's certainly pro-competitive. I think what Anderson and Cooke wants to do is it wants to be on a competitive playing field consistent with what the MDSDA directs. And I think the legislature understood that there are ways that you can substantially harm and impair a dealership if you're forcing it to take on a substantial geography, invest the millions of dollars, and then have those impaired overnight because they decide to drop in a new dealership squarely within that dealer locality. Are you arguing that they're modifying the franchise agreement? We are arguing, yes, Your Honor, that they're both modifying the franchise agreement as well as making a change to the area of the sales effectiveness. And I think the district court got the franchise piece correct. The court said if you identify a change to the dealer locality, you have a plausible allegation that the franchise has also changed. The franchise is the dealer agreement. The dealer agreement provides in Section 1J that the manufacturer can change the dealer locality by providing written notice to the dealer identifying the change. And that's precisely what we have here. We have a pre-change notice, a dealer locality report, that identifies one dealer servicing 18 census tracts in the North Branch area. Is there a time limit on actions after notice that applies here? So under 80E.13 P&K, you have a 90-day period in which to make a contest. Under 80E.14, it's 30 days. And I know the district court makes a big deal about that. Why in the world would we give dealers less time under 80E.14 and more time under 80E.13 P&K? And I think the answer to that is the nature of the inquiry that must go into determining whether you have a right. Under 80E.14, it is an easy assessment of distance between two points. You could discern that in 30 seconds in a Google search. Under 80E.13, the analysis is much more robust as it was in this case. You have to hire experts and do an analysis as to what geography has changed. Is there population growth? Has the census tract data changed at all? And then you have to determine, is there a substantial impairment to my investments, to my service and sales obligations? And so I think it makes sense in that context that you would have 90 days in which to assert a right. But there's no specific versus general canon applicable here. As the district court said, there are two different provisions talking about different relief in different circumstances. I also think, and this is covered in the briefs, there is a change to the dealer locality when you impose a new dealership squarely within that dealer locality. And I think what Ford is trying to do to avoid that outcome is arguing that the creation of a new dealership is separate from Ford's decision to change Anderson Cooke's dealer locality through the removal and reassignment of census tracts. That's how they get there. In fact, that's their predicate argument for each of their analyses in their appellate brief. They make that statement at page 6, 10, 12, and 15 of the appellate brief. And the district court does the exact same thing. In its motion to dismiss order, it found that there are two distinct changes, an imposition of a new dealership and a realignment of census tracts. And they use that finding to say that Anderson Cooke doesn't have relief under Section 13. But that finding is not only a fact issue. That finding doesn't exist anywhere in the record. It's not in our pleadings. It's not in the record. These are not separate. It doesn't sound like a fact finding to me. It sounds like a legal conclusion. And even if it's a legal conclusion, Your Honor. What's factual about it? They're saying that there were two separate decisions made, a decision to install a new dealership and a decision to realign census tracts. And I think that legally or factually that's entirely incorrect. There aren't two separate decisions being made. There's one singular decision. The census tract realignment is the necessary byproduct of the new dealership here. And that is not Ford's musings on the issue. That is Ford's stated position. So as Ford describes the dealer locality change in all of its correspondence, they're attached to the complaint. And I think the November 10, 2023 letter is particularly helpful. There it talks about the dealer locality change as establishing a new dealership and assigning census tracts closest to that dealership for purposes of assessing its performance according to Ford's standard locality assignment methodology. That's at Appendix 124. So they're not saying it's two separate changes. They're saying we're installing a new dealership, and as a result of that, consistent with our policy, consistent with our methodology, we're going to realign census tracts so that the census tracts closest to the new dealership are in its locality. And that makes sense because that's how the dealer locality talks about sales performance obligations. In other words, they track sales by looking at the number of sales you make into a dealer locality as compared to the – as a percentage of the total registrations within that dealer locality. Counsel, before your time expires, is there a final decision that we're reviewing here in light of the dismissals of other claims and the potential that those matters could be re-initiated leading to further litigation? There isn't, Your Honor, and I'm going to make short shrift of this. And I know my audience, consistent with the West American insurance decision and the Minnesota pet breeders case, we will agree and consent to having those claims dismissed without prejudice as dismissed with prejudice. There's no utility in Anderson-Cook to pursue the byproduct of the actual change at issue here. Challenging census tracts without dealing with the cause and the harm stemming from that wouldn't do Anderson-Cook any good. So to help the court address the merits, we're willing to deem it without prejudice to wit prejudice. And with that, I reserve the balance of my time. Thank you, Your Honors. Thank you. Mr. Davis. Good morning, Your Honors, and may it please the Court. I wanted to actually jump off of something that Mr. Thomas stated. You'll have to speak up for me.  And that is he said that the district court decoupled the decisions to create a new dealership and the census tract reassignment. But because of the procedural posture that brought us here, the decoupled decision is all that's before the court. Because remember, the district court ruled that the actual reassignment of census tracts, that actual decision, he denied Ford's motion to dismiss. He only granted the motion to dismiss insofar as Anderson was trying to challenge the decision to open a new dealership. And that's critical because that's the only issue on appeal. They argue this as if those two decisions are both before the court. They're not. The census reassignment decision, the census tract reassignment decision is out of the case and they've just conceded it's no longer part of the case. So what is left is what the district court actually ruled on. But it's not left anymore. It's no longer in the case. All that's left in the case is what the district court ruled on. Does Ford's decision to open a new dealership, that decision alone. I don't understand why that, given the concession, I don't understand why this is, you're even bothering to talk about this. Well, this is, yes. The order he issued is what's on appeal. And what he didn't decide is now not even in the case. And it's important because what he said, it is decoupled. The issue is what is the effect of Ford's decision to open a new dealership? And it really does come down to, like Your Honor said, it's a matter of statutory interpretation. It's not a matter of fact. So let's turn to that. There's two ways that the district court got to where it came to the decision as a matter of statutory interpretation. First, I would say is the district court's ruling essentially is that Anderson is trying to fit a square peg into a round hole. If you look at the statutory language of 13P and 13K, those are the two provisions that they're proceeding under. 13P says that a dealer is liable if it modifies or threatens to modify the franchise. The franchise, everybody agrees, is the contract between Ford and Anderson. And as the district court held, Ford's decision to open a new dealership itself does not require a single word of the contract to be changed. The contract was in existence the day before Ford decided to open this new dealership. The same contract existed the day after. There has been no change to the franchise. There's no allegation that there's been a change to the franchise. And Judge Loken, to come back to your question, that's why I think it's so important as to what Anderson is trying to do here. They're trying to take a different act, the related act of we're going to open this new dealership and we're going to redesign the census tracts. Well, that's a separate decision. That's no longer in the case. So the only issue is does Ford's decision, we are going to open a new dealership, does that change the franchise? And the answer is no, and that's what the district court said. The contract does not change. The statute requires a change to the contract. The same thing goes for 13K. That is the provision that prohibits a manufacturer from changing the area of sales effectiveness. And if you look at the statute, the area of sales effectiveness is defined as, quote, the geographical area under which their sales and service is evaluated. It is, by statutory definition, a geographical area. You look at the map. Does the map change? Ford's decision to open a new dealership does not require the map to change. It did make a decision later that it was going to reassign census tracts, but that's no longer in the case, as Anderson just conceded. So as the district court held, does Ford's decision to open a new dealership, does that require a change in the area of sales effectiveness? And the answer is no. So that's just a matter of pleading. Your Honors wouldn't even have to get to the larger issue of statutory interpretation based just on the fact that there's just no, that they can't get from A to B when the only issue that the district court ruled on in this case and the only issue before the court is what is the effect of Ford's actual decision and does it fit into those statutes. But let's say that the court agreed and said, well, somehow 13P and 13K are broad enough to, amongst whatever else it encompasses, it encompasses, by its language, it would encompass just the raw decision to open a new dealership. That takes us squarely into the second reason for the district court's ruling, and that is the well-established principle, both in Minnesota law and in federal law, that when you have a comprehensive statutory scheme and there is a specific provision addressing a specific problem, that the terms of that provision control, even if other provisions are broad enough to encompass the conduct in question. And we didn't hear any discussion of that, and I think it's because the case law on this is fairly clear. Well, what's the broader decision? So that's, so the... What's the controlling decision, then, in your view? In our view, what the Minnesota Supreme Court did in the Canexas case and the Conan case, they both rely on the United States Supreme Court's decision in RAD LAX, and RAD LAX specifically, I mean, I'll just, I think it's worth even pointing out the language from RAD LAX on this point because it just speaks right to this case. Now, they talk about there's inconsistency. That's not, sometimes you can have that situation where there's inconsistency between one provision and another, but that's not the only way this works. RAD LAX, this is what the Supreme Court said, that that canon, this canon of statutory construction, most frequently applies when you have a general permission or prohibition that's contradicted by a specific prohibition, but it has full application as well to statutes such as the one here in which a general authorization and a more limited specific authorization exist side by side. So, and it goes on to say that the language of a statutory provision, although broad enough to include a claim, will not be held to apply to a matter... Now, are you dragging unrelated case law into this proposition that sounds to me quite counterintuitive as a matter of statutory interpretation? Do you have a case for this proposition that a broad view of the statute trumps a more specific narrow provision? That sounds wrong to me. No, our position is the reverse. The specific, and let me back up, so maybe... That's what I heard you say. Then I apologize. I think we go back to what you said, Judge Loken. You made the observation that their position sounds very anti-competitive, and you're right. It is if you look at the Minnesota... Because the statute is. No, but that's the point. The statute is not if you look at it comprehensively. Section 14 is a specific provision, and it is titled Establishment of New Dealerships. It is a specific section of the statute that specifically addresses the issue of when you can challenge the establishment of a new dealership. The legislature and the district court said this. The legislature made a decision, because as you noted, Judge Loken, this is an unusual statute. We don't have a lot of statutes that expressly would forbid free market competition. That's kind of rare. This is an unusual type of statute. But it made a decision that if we were talking about one new dealership being open within 10 miles of another dealership, there is a very rapid 30-day statute of limitations in which there needs to be a lawsuit brought. There are defined factors that a court must determine are in place before that new dealership can go in, and it requires an expedited decision. The legislature decided, though, if it's more than 10 miles away, the free market's going to rule, and that's the situation we're in here. I'm not so sure that you aren't reading that a little overly broad. It seems to me that you're saying that any time a dealership is more than 10 miles away, that the absolutely only remedy that an existing dealer has is under one provision to block the formation of a new dealership. What if there are other actions that may have been taken? Can't they be challenged under other provisions of the statute other than the establishment of the dealership? Well, but again, the establishment of the dealership is the only question before the court. Right, but in this particular case, but I think you're speaking more broadly that no existing dealer could ever bring any action under the MVSDA other than this one provision if it's within 10 miles. Oh, no, that's not what I'm saying, Your Honor. I'm saying that if what is being requested is a limitation, is literally saying that the court needs to stop the existence of a new dealership from coming into the market, the legislature had a specific provision and it made the legislative determination that in that 10-mile radius, you have a way to block the new dealership. Outside the 10-mile radius, you don't. But you could have changes to the franchise agreement, for example. Sure, and here the district court, that's the point. Here the district court said, look, you've stated a claim for that, and they dismissed it. So that's not before the court. The point is, yes, and what the district court was very narrow in its ruling. If you are saying, look, I'm going to go to a court and say that you're not allowed to have free market competition, and it's outside this 10-mile radius, the district court said, no, Minnesota is going to allow the free market to control. Now, if Ford had taken other acts that fell into the other part of the statutes, then sure, bring that lawsuit, but that's not before the court, and it's not going to be on remand either. So that makes it very simple to affirm, because that's really the only issue in place. So I hope that addresses your concern, and if I reverse that, I apologize, Judge Loken, but yes, that is the point. Is that... Well, I'm not sure that your argument is... I'm not sure that's not before us. In other words, I'm not... I'd have to go back and study to decide whether the district court didn't implicitly rule in favor of you on that legal proposition that the appellant says is wrong. Well, like I said, Your Honor, I believe if you look at the entirety of the decision, the district court denied Ford's motion to dismiss in all respects, except insofar as they are trying to challenge the establishment of a new dealership. That's when they dismissed everything else. So that's why I'm saying that this unusual posture is that the very narrow decision is all that's left in the case, and that is, does Ford's decision in and of itself to open a new dealership, does that state a claim for relief under these two provisions? And if so, as a matter of statutory interpretation, is that argument preempted? So my time is wrapping up. I don't know if the court has any further questions, but I do think particularly in light of the jurisdictional concession, there's very little for the court to decide. The case law on this, I think, again, the RAD LAX case, we did have a 28-J letter, but we cited it in our main brief as well, but that goes directly to the point. I would point out that the other case I would look at, Your Honors, is the Connexus case, which in a way is very similar here. Connexus had a Minnesota Supreme Court looked at. There's two different statutes that the claim fell into just as a matter of plain language, which we don't think is the case here, but in Connexus there was no question. One had a statute of limitations that was two years, but it was under a very specific set of circumstances. There was a broader statute of limitations that was a three-year statute of limitations. The claim at issue could have fit under both of those provisions, but the Minnesota Supreme Court said, no, when you have a comprehensive statutory scheme, which we have here, and you have a specific provision in that scheme, which is addressed to a specific problem, that controls even though the claim theoretically could have fallen under the more broader provision. Here I think that the last thing I just want to end with is that there should be no question that they're arguing for the 13P and 13K to be broader. There's no question that 13P and 13K cover more. Even if you accepted their argument, 13P and 13K cover much more than new dealership decisions. Like Judge Grouse said, it would cover, here's a new contract, we're changing the language of the contract. That's covered, but that's broader than the specific issue of can you open a new dealership. So when you have a statute that has language broad enough to encompass the specific provision, you have to look at the specific person and controls. Otherwise, it would make 14 more or less surpluses. You could always just avoid it. You could avoid the 30-day statute of limitations by filing under one of these other two provisions. And that would be a bizarre result, and it would actually render much of the statute surplus. It would nullify what the Minnesota legislature decided when it put this very specific limitation on channels of student dealerships. So with that, yes. One final comment, and I don't want to make too big of a deal of this, but I didn't see any summary of argument in Ford's brief. Any summary of argument? Summary of argument section, which is required under the rules. Page 8, bottom of page 8. Summary of the argument. All right. I will take a look. All right. Thank you, Your Honor. For rebuttal, Mr. Thomas. Thank you, Your Honors. I'll pick up where Board's counsel left off with respect to the specific versus general canon. The district court did address that issue and rejected it. It's that Appendix 399 that was during the oral argument. The Connexus decision is entirely an opposite, so is the Conan decision. Both of those cases dealt with inconsistencies in statutory redress. The Connexus decision, there was a statutory provision that had a two-and-a-half-year statute of limitations. One had a three. One barred the claim. One allowed the claim. There's nothing like that here. Both provisions are in perfect harmony. There's no inconsistency. The Supreme Court case reference, the Red Alex case, there the debtor was trying to take advantage of a catch-all that would have basically nullified a requirement that you allow credit bidding, and there's no such issue here. We're not swallowing the rule. We're not rendering anything surplusage. Quite the opposite. We're saying that there's an entirely different provision that provides different redress based on a different analysis. Every time a dealership is outside of the 10-mile radius, there isn't a claim under ADE.14. But that's a narrow assessment of geography, and that's not what ADE.13P and K do. They talk about is there a change to the franchise? Is there a change to the area of sales effectiveness? And if there is, is there substantial impairment of investments, service and sale obligations? Is there inconsistency in the change when we look at the pattern of motor vehicle sales in the region? That's what's at issue. So there's no inconsistency. The notion that you have to change language in the franchise agreement for there to be a modification is incorrect as well. But you're not addressing the basic argument that K and P don't prevent the establishment. They prevent other things. I think they... And the only thing on appeal is establishment. That's correct, Your Honor. And I do not read ADE.13P and K to create that narrowing. There isn't anything in ADE.13P and K that says... The district court said there is. I mean, it's mileage. They said ADE.14 is the exclusive mechanism, and we disagree with that, Your Honor, because in order to get to that point, you'd have to take ADE.... It doesn't have to be exclusive in order to bar this. It's the application of K and P to this specific issue. And I think with respect to this specific issue, we read ADE.13P and K when it references the area of sales effectiveness. That's the geographic area that they're charged with effectively servicing and selling into. When you install a new dealership... But that's not... I mean, the district court rejected that, obviously. And I think that was wrong, Your Honor. Okay. And I think that was wrong because when you drop a dealership inside the geographic area that Anderson Cook is expressly charged with servicing and selling... Yeah, I understand. Thank you, Your Honor. Very good. Case has been thoroughly briefed, and argument's been helpful, and we'll take it under advisement.